## Blackwell, et al. v. Blackwell, et al.

(Decided February 28, 1912.)

### Appeal from Webster Circuit Court.

1. Wills—Character of Estate Devised—Intention of Testator.—The question in this case is whether a specific devise of a store house and two lots by the will of a testator to his son, Clarence, vested in the latter merely a life estate therein, instead of the fee as in a specific devise of real estate to another son, Elbert and a general devise of certain other real estate to the two sons jointly. While the language of that part of the will devising specific property to Clarence apparently differs from that used in the devise of specific property to Elbert, and also the joint devise to the two sons, it is obvious from the language of the will as a whole that it was the intention of the testator to put the two sons on an equal footing with respect to the porperty devised them, respectively. That is that in the event of the death of either son before that of the testator, the children of the one so dying, should take under the will what would have been received by the father if living. Therefore, under the will, Clarence took the fee to both the property devised him alone and that devised him and Elbert jointly, subject to be defeated by the happening of his death before that of the testator, and in the latter event the property will go to his children.

2. Same—When May Be Defeated by Happening of Contingency.— Where an estate is given by will which may be defeated upon the happening of a contingency, and there is no other period apparent or intended, in which the event shall occur, it shall refer to an event happening within the lifetime of the testator.

F. M. BAKER for appellants.

BOURLAND & HUNT for appellees.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

This appeal involves a construction of the will of Thomas Blackwell, deceased, who was survived by his wife and two sons, all devisees under the will. The question especially presented for decision is, whether

the son, Clarence Blackwell, takes the fee, or a life estate merely, in certain real estate devised him by the father's will?

The will is an instrument of many crudities and was written by the testator, who was an uneducated man. Many of its clauses are obscure; this is particularly true of such parts of the will as dispose of the real estate. We copy in the opinion so much of the instrument, in its crude form, as will throw light upon the question to be decided.

"3d. I want and set apart for my son, Clarence Blackwell, the Store Houses & Lots Now Occupied by him & all accts against him from me Squared This all in case of his death to revert to his Children. Also all real estate to him and Elbert Share & Share alike in case of my death to them or their Children Only.

"5th. Elbert Blackwell, my son, shall have my Store building and Contents at my death and if not Married to Keep his Mother from proceeds of same until she will get married Then her Husband shall support her.

6th. All proceeds of note accounts and Realty outside of the above shall be equally divided between My two sons except the House and Lot opposite Livery Stable which one-half belongs to Sallie B. She shall have all of same also House and lot on which we live a line running from the yard fence to the back of garden and all that west Except the lot in front of Clarence's house Bought of Lute Bailey and Bro Which I Except for Clarence & Elbert Blackwell Everything Share & Share alike This House lot including Stable to Railroad shall be Sallie's in Full and Clear.

9th. This I give as My last will and desire and hope that I have just in my remarks and considerations. My Several deeds to the Boys I hereby again Endorse as a last act Except The Tha Baker and Odd Fellows lot hereinbefore mentioned for Clarence in full.

10th. The Factory Building Should be kept Insured or Sold as they may Deed proper by Clarence's decision when the title to Sale shall be clear."

It will be observed that by clause three, the testator "wants and sets apart" to his son, Clarence Blackwell, "The store house and lots occupied by him." "This, all in case of his death to revert to his children—also all real estate to him and Elbert (the other son) share and share alike in case of my death, to them or their children only."

The store house and lots occupied by Clarence Blackwell are devised him alone; the other real estate mentioned in the same clause and in clauses five and six of the will is devised Clarence and Elbert equally. In declaring that the store house and lots devised Clarence alone shall, in case of his death, revert to his children, the testator, in our opinion, had no other meaning than that expressed in the words following the joint devise to Clarence and Elbert, viz.: "In case of my death to them and their children." The word "revert" appearing in connection with the devise of the store house and lots to Clarence alone was not used in its technical sense by the testator; its evident meaning is that if Clarence was not living when the testator died, in that event, his children would take the property that would have gone under the will of Clarence, if living.

In other words, when considered with the other clauses of the will, the meaning of the testator, as expressed in clause three, was that in the event of the death of either Clarence or Elbert before the death of the testator, the children of the one so dying would take, at the death of the testator, what would have been received under the will by the father if then living. Indeed, we think the testator's purpose was to put his sons on the same footing with respect to the property devised them, respectively, and to give to the devise to each of them the meaning that would have resulted from the application of the rule stated in section 4841, Kentucky Statutes, if nothing had been said in the will about the death of either. That section provides:

"If a devisee or legatee dies before the testator, or is dead at the making of the will, leaving issue who survive the testator, such issue shall take the estate devised or bequeathed, as the devisee or legatee would have done if he had survived the testator, unless a different disposition thereof is made or required by the will."

Our conclusion that the will invests Clarence with the fee to the store house and lots devised him by the third clause of the will, as well as the property devised him and Elbert jointly, is also supported by clause nine of the will, which gives him the Baker and Odd Fellows lots "in full." These are the same lots previously devised by clause third to Clarence alone.

By the words "in full," the testator doubtless meant that they should go to Clarence wholly, absolutely, without condition or limitation, other than the occurrence of

Clarence's death before that of the testator, in which event the lots would go to his (Clarence's) child or children. If so, Clarence took the fee, subject to be defeated by the happening of his death before that of the testator. Numerous cases have been decided by this court in which it was held, that where an estate is given by will which may be defeated upon the happening of a contingency, and there is no other period apparent or intended, in which the event shall occur, it shall refer to an event happening within the lifetime of the testator. Wren v. Hughes, 2nd Met., 129; Wills v. Wills, 85 Ky., 486; Crozier v. Cundell, 99 Ky., 202; Carpenter v. Hazelrigg, 103 Ky., 538.

Kohlhepp v. Kohlhepp's Admr., 143 Ky., 731, involved the construction of a will, clause six of which reads as follows:

"In the event of the death of either of my said sons, without lawful heirs of his body, the survivor and his lawful heirs shall inherit all of my estate, to be held and used as above provided and not otherwise."

With respect to the meaning of this clause we said:

"The contingency mentioned in clause six, under all the authorities, must be construed to refer to the death of Kohlhepp before the testator or before he became entitled to the possession of the devised estate, and it is not necessary to determine which."

In Washer's Ex. v. Washer's Exr., 143 Ky., 645, another recent case, it is in the opinion said:

"Where a devise is made to several persons by name, with words of survivorship annexed, if the gift is to take effect in possession immediately after the death of the testator, the uniform rule of construction is to refer the words of survivorship to that event (i. e., the death of the testator) and to regard them as intended to provide against the contingency of the death of the object of the testator's bounty in his lifetime."

It is admitted by all the parties that the testator's other son, Elbert, took the fee in the property devised him; and in our opinion the will, considered as a whole, manifests no intention on the part of the testator to discriminate between his sons. We think it was his intention to vest in Clarence the same character of title in the property devised him that was vested in Elbert by the devises to him, and the intention of the testator must be gathered from the will as a whole. If, however, we were in doubt as to the proper construction of the instrument,

it would be our duty to adopt such a construction thereof as would establish a fee, rather than a life estate, for the law prefers the vesting of estates, and in case of doubt favors a fee, rather than a lesser estate. Kentucky Statutes, section 2342; McCauly v. Dale, 32 R., 124; Washer's Extr. v. Washer's Extr., 143 Ky., 645.

As the judgment of the circuit court conforms to the conclusion we have expressed, it is hereby affirmed.