## Liberty Bank & Trust Company v. Bimbas et al.

(Decided January 15, 1929.)

HARDY, HARDY & BULLITT and FRED FORCHT for appellant.

MATT O'DOHERTY, WM. MARSHALL BULLITT, JOHN E. TARRANT, DAVID R. CASTLEMAN and ROBERT F. VAUGHAN for appellees.

OPINION OF THE COURT BY JUDGE LOGAN—Affirming.

John D. Taggart died in 1898. He left an estate valued at more than $1,000,000, according to allegations in one of the pleadings in this case. In the year prior to his death, he made a will which was admitted to probate in the Jefferson county court within a few weeks after his death. In the first clause of his will he appointed the Fidelity Trust & Safety Vault Company executor, and directed it to pay his debts and funeral expenses; in the second clause he left to each of two of his sisters an annuity of $200 for life; in the third clause of his will he devised and bequeathed all the residue of his property to the Fidelity Trust & Safety Vault Company, in trust, to hold, manage, and control as a whole until the 1st day of January, 1902, with directions to it that it collect the income, pay expenses, and divide the net income among his six living children.

This controversy grows out of the construction of the provisions of the fourth clause of the will, or rather the first paragraph of that clause. It is as follows:

"Fourth. As soon after the said 1st day of January, 1902, as convenient my said executors shall select three disinterested commissioners who shall appraise and value all my real and personal estate and after said valuation my daughter Annie shall have the right, if she so elects, to take my house and lot on the south side of Market between 2d and 3d streets at the value so fixed upon it. My daughters Ella and Sally may in the same way take my house and lot on the east side of Fourth street known as the New York Store at its value so fixed, and my daughter Lilly may take my house and lot on the east side of Fifth St. between Market and Jefferson at

its value so fixed. My executor shall divide the residue of my estate so as to make all of my six children exactly equal and shall convey my daughters shares to a trustee to be selected by them, and in default of such selection by them or any one of them, to itself as trustee for my said daughters or daughter during her or their natural lives, the net income to be paid to them in monthly or quarterly installments as they shall elect, with remainder in fee as they shall respectively by will appoint and in default of such appointment to their respective issue if any, if none then to their heirs at law.''

Lilly T. Butler, one of the daughters of the testator, failed to select a trustee to manage her estate, and, under the quoted provision of the will, the Fidelity Trust & Safety Vault Company, executor of the will, conveyed to the Fidelity Trust & Safety Vault Company, as trustee for Lilly T. Butler, all of the property which passed to her under the fourth clause of the will, including the house and lot on the east side of Fifth street between Market and Jefferson, in the city of Louisville. The trustee managed and controlled the property in accordance with the provisions of the will, as it appears from the pleadings, until 1924, at which time Mrs. Butler conceived the idea that she was the owner of the house and lot mentioned, in fee simple.

On February 14, 1924, she executed a lease on the house and lot to the appellee, George L. Bimbas. The lease was to run for 25 years, and the total consideration to be paid for the lease was $76,250, payable in monthly installments, the amount of the installment growing larger with the expiration of time. On April 23, 1927, Bimbas addressed a communication to Edward J. Clem, agent, and William Q. Hall, in which he authorized them to sell the lease which he held on the property, subject to all restrictions and conditions set forth in the lease from Mrs. Butler to him. He stated that he was willing to accept $8,000 in cash for the lease subject, however, to the approval of the Fidelity & Columbia Trust Company, the successor of the Fidelity Trust & Safety Vault Company. In the communication, he represented that the lease had approximately 22 years to run, and he set out the rentals payable to Mrs. Butler under the terms of the lease. He represented that all taxes had been paid, except state and county taxes for the year 1927, which were

to be assumed by the purchaser of the lease. The concluding paragraph of his communication is as follows:

"This offer to sell said lease is open for acceptance until Saturday, April 30, 1927, at 12 o'clock noon, and unless accepted before that time is null and void."

At 5 minutes past 11 o'clock on April 30, 1927, the appellant, Liberty Bank & Trust Company, wrote on the bottom of the aforesaid communication an acceptance. On May 2, 1927, Bimbas executed an assignment of the lease to the appellant, and by their written indorsement thereon Lilly T. Butler and the Fidelity & Columbia Trust Company consented to the assignment. The appellant, doubting the power or authority of Mrs. Butler, or the trust company, to execute the lease in the first place, declined to accept the assignment of it, and, as a result of its refusal, this suit was instituted for the purpose of having the chancellor decree a specific performance of the contract.

Appellant filed a general demurrer to the petition, and without waiving its demurrer filed an answer in three paragraphs. The first paragraph is in the nature of a modified denial of the allegations of the petition. The second paragraph is a denial that Mrs. Butler had a fee-simple title to the property covered by the lease, and a plea that she took only a life estate in the property under the fourth clause of her father's will. The third paragraph is a plea that Mrs. Lilly T. Butler was at the time of the execution of the lease a married woman, and that her husband had courtesy interest in her property as fixed by the law. There is filed with the answer a copy of the deed executed by the executor to the trustee of Mrs. Butler pursuant to the provisions of the fourth clause of the will, which deed shows that the property covered by the lease was included in the trust deed. The appellee, Bimbas, filed a demurrer to the first, second, and third paragraphs of the answer. The chancellor carried the demurrer to the answer back to the petition and sustained it, holding that Mrs. Butler took only a life estate in the property covered by the lease under the provisions of the will of her father. The written opinion of the chancellor construing the will is made a part of the record, and it is a convincing argument in favor of the construction of the will as then placed upon it by the chancellor.

The appellee, Bimbas, filed an amended petition, but we find in it little that strenghened his cause of action. In fact it is doubtful whether anything is added to the cause of action set up in his original petition. To the petition as amended a demurrer was interposed, and the chancellor, upon a reconsideration of the whole case, changed his opinion as to the proper construction of the will of John D. Taggart, and, in an elaborate and well-reasoned opinion, he held that Mrs. Butler took the fee-simple title to the property covered by the lease, and that she, therefore, was vested with the authority to execute the lease to Bimbas, and that Bimbas was entitled to have his contract with the appellant enforced.

The appellant has appealed, and it attacks the judgment of the chancellor on three grounds: First, that the judgment is not sustained by either the pleadings or the evidence; second, that there was no contract or memoranda in writing signed by Bimbas, and, therefore, the statute of frauds is a bar to his maintaining this action; third, that Mrs. Butler took only a life estate under the will of her father, and that any attempt by her, or her trustee, to execute a lease beyond that, would be ineffectual, and the tenant under such a lease would take subject to the rights of the remaindermen. Under the authority of Posey v. Kimsey, 146 Ky. 205, 142 S. W. 703, we are of the opinion that the two first points relied on by appellant must be determined against it. The only real question in the case is the third, relied on by appellant. That is whether, under the provisions of the fourth clause of the will of John D. Taggart, Mrs. Butler took a fee-simple title to the property covered by the lease, or only a life estate.

It is contended by appellant that it was the intention of the testator that his entire estate except that part of it required to pay any debts and the annuities mentioned in the second clause, should be divided into six exactly equal portions, and that the provision of the will which allowed his daughter to take certain property was for no purpose other than to allow them to take the property which should constitute a part of their portion of the entire estate, and that, when Mrs. Butler elected to take the house and lot covered by the lease, she was only taking a part of that which was to be allotted to her, and that to the part so taken should be added enough of the residue to make her portion exactly one-sixth of the

estate. When this had been done, the entire portion so allotted to her, including the house and lot which she had taken, was to be conveyed to the trustee and held by it for her use and benefit during her life. It seems that this was the construction placed upon that provision of the will by the interested parties for many years, but the construction placed upon the will by the parties cannot change the meaning of the testator, and, if he had an intention in mind different from the construction placed on that provision of his will by the parties in interest, it is his intention that must control, and not what the parties thought he meant, and the court must find out what his intention was from a consideration of the language of the will itself.

On the other hand, it is contended by the appellee, Bimbas, and Mrs. Butler, that the language of the will clearly shows that Mrs. Butler was given the right under the will to take this property in fee-simple if she so desired, and that she exercised the right given to her and took the property under the terms of the will, and that she is, therefore, vested with a fee-simple title to the property.

The learned chancellor found it difficult to determine what was the testator's intention, and suggested that there are objections to every construction which may be placed on the language used. We share with him the difficulties which he found.

It is argued by counsel for appellant that a will granting to a devisee the right of election to take a named piece of property, and then directing that her share be conveyed to a trustee for her life, with remainder over, vests only a life estate in trust. As abstract law the statement is correct, but that is not the question for consideration. The question is whether it was the intention of the testator to give to his daughter, Mrs. Butler, the right of election to take the Fifth street property, and whether he then directed that her share be conveyed to a trustee for her life. That construction would not be unreasonable. But it is as reasonable to say that the testator, by the provisions of his will, gave his daughter the right to take the Fifth street property in fee, and that it should be no part of the residue of his estate, as it is to accept the construction contended for by appellant.

The testator had something in mind when he caused the provision to be written into his will that his daughters might elect to take certain parts of his property. He may have intended that the daughters so electing should take the property in fee simple, and that it should not be considered in the division of the residue of his estate; or he may have meant that the daughters so electing should take a fee-simple title in the property, and that without any regard to the difference between a life estate and a fee-simple, he meant for all of his children to be made equal in the portions of the estate which would immediately pass to them, or for their use and benefit; or he may have meant that the daughters so electing should take a fee-simple title, but each should be charged, as in case of sale, with the appraised value of the property so taken.

But it is urged by appellant that the division of his estate could not be so made as to bring about an exact equality, if any daughter took a fee-simple title under the will. There is a real difficulty, which apparently cannot be surmounted, if it was the intention of the testator that his estate should be divided between his children in exactly equal portions. It might reasonably be held that the direction as to exact equality applied only to the residue of the estate after deducting any of the property which the daughters were allowed to take in fee.

As was said by the chancellor in his opinion, there are difficulties in the construction of the provisions of this will under consideration whether the mind of the court travels in one direction or another, and what appears as a correct construction depends largely on the mental approach to the language used. Unless a different purpose appear by express words or necessary inference, every estate in land created by deed or will, without words of inheritance, shall be deemed a fee-simple or such other estate as the grantor or testator had power to dispose of. It is so provided in section 2342, Ky. Stats. In considering the will before us, therefore, we must find either express words in the will showing that it was not the intention of the testator to create in the daughter a fee-simple title, or we must find such facts in the will as create a necessary inference that he did not intend that Mrs. Butler should take a fee-simple title in the Fifth street lot.

When the testator allowed Mrs. Butler to take the Fifth street property, there is nothing to indicate that it was not his purpose that she should have it as her own,

with such title as it was possible for him to pass, and unless there are other provisions in the will indicating a different purpose, or from which a different purpose may be made to appear by inference, the daughter took a fee-simple title to the property. If any words used in the will may be in harmony with the idea that the testator intended for his daughter to have only a life estate, and may also be harmonized with the idea that he intended that she should have a fee-simple title, it would be the duty of the court to construe the will as vesting in her a fee-simple title.

Nothing else appearing, a fee-simple title always passes, and, if other things appearing may as well harmonize with the idea of a fee-simple title as against it, there is nothing to take the matter out of the statute, which provides that the title shall be a fee-simple unless a different purpose appear by express words or necessary inference. It has been held by this court—in fact, it is a well-established law—that when the mind of the chancellor is left in doubt as to the intention of the testator in such cases the doubt should be resolved in favor of the larger estate. Burnam v. Suttle, 148 Ky. 495, 147 S. W. 3; Edwards v. Cave, 150 Ky. 272, 150 S. W. 369; Blackwell v. Blackwell, 147 Ky. 264, 143 S. W. 1010; Washer v. Washer, 143 Ky. 645, 137 S. W. 227; McCauley's Guardian v. Dale, 108 S. W. 268, 32 Ky. Law Rep. 1243.

The question for decision in this case is whether the Bimbas lease under the terms of the Taggart will creates a valid leasehold for the full term thereof. The answer to this question is dependent on whether Mrs. Butler was vested with a fee-simple title to the property covered by the lease by the provisions of the will of her father. The chancellor found that Mrs. Butler was vested with a fee-simple title, and that the Bimbas lease created a valid leasehold for the full term thereof. Consequently the chancellor decreed a specific performance of the contract. A careful consideration of the case by the whole court has caused us to reach the conclusion that we are unwilling to say that the chancellor erroneously decreed a specific performance of the contract.

Judgment affirmed. Whole court sitting.