## Hatcher v. Pruitt et al.

(Decided November 29, 1929.)

732

STRATTON & STEPHENSON and CAUDILL & TACKETT for appellant.

COMBS & COMBS for appellees.

OPINION OF THE COURT BY DRURY, COMMISSIONER— Affirming.

Appellant, Walter Hatcher, as plaintiff in the trial court, sought a sale for the purpose of partition of a tract of land on Abbott's creek, known as the William Bayes land. The defendants were the devisees under a will made by his grandmother, Elizabeth Jane Worsham Elliott.

Walter Hatcher claims to be the owner of seventy-one eightieths of this land. By his petition, Thomas Wilson Elliott, the relict and devisee of Elizabeth Jane Worsham Elliott, was permitted to make himself a party. He asserted in himself the ownership of a life estate in ten twenty-fourths of this land. He admitted that Walter Hatcher owned fourteen twenty-fourths of this land in fee and in addition that he owned one twenty-fourth subject to the life estate of Thomas Wilson Elliott. Elliott resisted a sale for a partition, and sought to have the land partitioned in kind. Other devisees of Elizabeth Jane Worsham Elliott filed a similar answer, except they resisted partition of any kind.

The issues were made up, the case prepared, and the court found for the defendants, and adjudged Walter Hatcher to be the owner and entitled to the immediate possession of only fourteen twenty-fourths of the land.

In the other ten twenty-fourths the court adjudged to Thomas Wilson Elliott a life estate, and the court directed commissioners to partition this land in kind, to allot to Walter Hatcher the fourteen twenty-fourths of which he is entitled to immediate possession, and to allot the remaining ten twenty-fourths to Thomas Wilson Elliott during his life. Walter Hatcher appeals.

The subject of this controversy is a farm of 206 acres, alleged to be worth about $10,000, and this controversy has grown out of two wills, one executed by Elizabeth Jane Worsham Elliott, and the other by Thomas R. Worsham. We shall dispose of her will first. In it she devised one-fifth of her interest in this farm to the heirs of her daughter Angeline M. Clark, one-fifth to the heirs of her daughter Tommy C. Hatcher (one of these is the plaintiff, Walter Hatcher, and the other is his brother, H. W. Hatcher), one-fifth to her grandson Clyde Johnson, two-fifths to Vergie Pruitt to be laid off around the house, and she gave the whole of her interest in this farm to her husband, Thomas Wilson Elliott, during his natural life. The trial court properly disregarded Mrs. Elliott's direction that Vergie Pruitt's interest be laid off around the house, since Mrs. Elliott owned only an undivided interest in the land and hence could not control the partition of the whole farm. There is really but little trouble about the construction of her will. All of this controversy is relative to just what was her interest in this land. That involves a construction of the will of her first husband, Thomas R. Worsham, in the second clause of which he directs his executor, Joseph M. Davidson, to use certain funds on hand to purchase a farm for the benefit of his *wife and children*, and directs that the deed to said farm when purchased to be made to his *wife and children*. The funds on hand amounted to $955. Davidson bought a farm for $1,200. He took title to himself. After the death of Thomas R. Worsham, his widow married Thomas Wilson Elliott, and she, by the aid of Elliott, her son, Gus Worsham, and her daughter, Mrs. Mayo, later Mrs. Clark, raised the remaining $245 and paid it to Davidson. Thereupon Davidson executed a deed to the widow of Thomas R. Worsham (at that time Mrs. Elliott) and to the five children of Thomas R. Worsham, naming them, conveying them the farm he had bought, reciting therein that the title thereto, was to vest in them just as was intended by the will of Thomas R. Worsham.

Thus the situation is exactly the same as if Thomas R. Worsham had owned this farm and in his will had devised it to his *wife and children.*

Similar expressions in wills and deeds have given to the courts no end of trouble, and, beginning with Wild's case (decided in 1599) 6 Coke, 16 B. 77 Eng. Reprint 277, the courts have tried in various ways to fix upon some definite rule to follow in the construction of such expressions, and, from the number of cases cited in the notes to section 317, 18 C. J. p. 326, it is apparent that Kentucky has made large contributions to these efforts to find a solution. The case of Sarah Ann Rice v. Jarvis Klette, 149 Ky. 787, 149 S. W. 1019, L. R. A. 1917B, p. 45, was one of these, and in the notes in L. R. A. following this case, beginning on page 49, will be found a further list of Kentucky cases showing where we have endeavored to find a solution to this problem. And in the same volume of L. R. A. page 76, in the notes following the case of Cullens v. Cullens, 161 N. C. 344, 77 S. E. 228, will be found still others.

Appellant, Hatcher, is correct in his contention that a devise or conveyance made by a man to his wife and children, in the absence of other or explanatory expressions, will ordinarily vest the wife with a life estate with remainder to the children, but courts dislike to resort to rules of construction, and only do so as a dernier resort, after all efforts to arrive at the testator's intention from the examination of the will itself have failed.

In the sixth clause of his will Thomas R. Worsham said: "I will that my tract of land purchased in accordance with the provisions of the will shall not be divided until the children claiming an interest in said land shall have arrived at the age of Twenty-one years."

This sixth clause explains his will, discloses the testator's intention, and enables us to construe his will and arrive at his intention from the document itself without resort to rules of construction.

In this clause he deals with the right of his chilldren to demand a partition, and he expressly postpones that right until the youngest child shall have arrived at the age of 21 years. That shows how he meant the title to this farm to vest. He meant that the widow should take one-sixth of the farm and each of his five children should take one-sixth, which they should hold as joint tenants without partition until the arrival of the youngest child at the age of 21, and not that the widow should

take a life estate and each of his children should take one-fifth of the farm subject to the life estate.

In Duke v. Allen, 198 Ky. 368, 248 S. W. 894 we said: "Remaindermen cannot have compulsory partition where there is an outstanding life estate in the entire property" (citing authority). "The reason for the rule is that the objects of the partition are to avoid the inconveniences which result from a joint or common possession and enable the petitioner to possess, enjoy, and improve his share in severalty. Therefore, if the petitioner is neither in possession nor entitled to possession, he could not possess and enjoy his share in severalty, even if it were set apart to him, and, that being true, there are no inconveniences of a joint or common possession of which he can complain. Not only then, would the proceeding fail of its purpose, but the partition, though equal when made, might be very unequal when the estate should vest in possession."

Thomas R. Worsham is supposed to have known the law, whether he did or not, and in using this expression about division he clearly indicated he was giving them something they could divide, that he was not creating in his wife a life estate with remainder to his children, but was giving to them this farm as joint tenants, each to have a then vested right to one-sixth thereof in fee.

Having reached this conclusion, the solution of the rest of the problem is not difficult. Elizabeth Jane Worsham Elliott by this will and deed acquired a fee-simple title to one-sixth or four twenty-fourths of this farm.

One of her children (Melvina Worsham) after the death of her father, after Davidson had bought this land and made this deed, and after she (Melvina) had reached the age of 30 years, died unmarried, intestate, and without issue, and her four twenty-fourths or one-sixth of this farm passed under our laws of descent and distribution to her mother, Elizabeth Jane Worsham Elliott.

Elizabeth Jane Worsham Elliott and her husband, Thomas Wilson Elliott, purchased the one-sixth interest of her son Gustavus Adolphus Worsham in this farm, and Elizabeth Jane Worsham Elliott thus became invested with title to another one-twelfth or two twenty-fourths of this farm. Thus we see Elizabeth Jane Worsham Elliott acquired in all ten twenty-fourths of this farm, and that was what her devisees took from her under her will.

Thus Thomas Wilson Elliott is entitled to the present possession of ten twenty-fourths of this property and to hold same as long as he lives.

The appellant, Walter Hatcher, it is agreed, owns and is entitled to the other fourteen twenty-fourths. These two joint tenants, Thomas Wilson Elliott and Walter Hatcher, are entitled to immediate partition of this farm between them according to their respective interest, and the judgment gave them that.

Hence the trial court's judgment is correct, and it is affirmed.

The whole court sitting.