## McGinnis et ux. v. Hood et ux.

Feb. 27, 1942.

W. H. Phillips for appellants.

C. E. Rankin for appellees.

Opinion of the Court by Judge Perry—Affirming.

The one question involved in controversy upon this appeal is the one raised as to what is the proper construction of that part of the deed whereby the grantors,

P. W. Bottom and wife, conveyed the ninety-five and a fraction acre tract of land here involved to Dr. John Patterson and "Cora White and her bodily heirs." Only that part or one-half portion of this tract of land which was by the Bottoms conveyed by the expression or phrase "to Cora White and her bodily heirs" is here involved.

A controversy having arisen between the appellants and appellees as to what is the proper construction of this phrase employed by P. W. Bottom and wife in conveying the ninety-five acre tract here involved to Dr. John Patterson and "Cora White and her bodily heirs" (the appellees contending that an absolute title in fee simple was conveyed to appellee, Cora White, whereas the appellants insist that she took under such grant only a life estate, with remainder in fee-simple title to her bodily heirs), to determine such question this proceeding was brought in equity in the Mercer circuit court by Onis J. Hood and wife, Osie Lee Hood, on a contract made by and between them and the defendants, Guy McGinnis and wife, Mary Evelyn McGinnis, by the terms of which plaintiffs agreed to sell and convey to McGinnis and wife and they to buy said real estate, including that part thereof conveyed by P. W. Bottom and wife to "Cora White and her bodily heirs," for an agreed consideration, payable by defendants to plaintiffs in cash upon their tendering to the defendants a good and sufficient deed with covenant of general warranty, conveying them a good and perfect title in fee simple thereto.

Plaintiffs alleged that on December 15, 1941, they executed, acknowledged and tendered to defendants a general warranty deed, conveying, for the stated consideration, the aforesaid real estate to them, which was effective to vest the appellants with an absolute fee-simple title to said land, but that appellants refused to accept said deed or to carry out said contract, or to pay for the land as agreed, upon the ground assigned, that the tendered deed was insufficient to vest them with an absolute fee-simple title to that part of the tract of land which was by the deed of P. W. Bottom and wife conveyed to "Cora White and her bodily heirs."

Plaintiffs further alleged in their petition that the said real estate here involved and which they have contracted to sell to appellants was conveyed plaintiffs, here appellees, by deed of Dr. John Patterson, Cora

White and W. R. White (her husband) which vested in them absolute title thereto with covenant of general warranty, said deed being of record in Deed Book 90, page 148, in the Mercer county court clerk's office; that their grantors, Dr. John Patterson and Cora White, acquired title to said land through a deed executed them by P. W. Bottom and wife, dated January 26, 1909, and recorded in Deed Book 79, page 296, in the Mercer county court clerk's office; and, further, that although the grantor in said deed names "Cora White and her bodily heirs" and Dr. John Patterson as grantees and does further recite that the said grantor, P. W. Bottom, reserves "a life time interest in this conveyance during their (Cora White and her bodily heirs) natural life," with the privilege reserved of "selling said land at his option and reinvesting the proceeds in other land for the said Cora White and her bodily heirs but not for the said Dr. John Patterson," the proper construction and legal effect of said deed (regardless of such reservation) is that it effectively conveyed both Dr. John Patterson and Cora White, in fee simple, an undivided one-half interest in the land and that plaintiffs, their grantees, by this aforesaid general warranty deed, were vested with an absolute fee-simple title to the land, P. W. Bottom and wife being then dead and their right reserved, to sell and reinvest, terminated.

Further the petition alleged that one of plaintiffs' grantors, Cora White, still lives, is a married woman, the wife of W. R. White, who joined in the deed, and who still lives; that Cora White is sixty-one years of age; and that they have two children, a daughter, Eula White, about thirty-eight years of age, and a son, P. J. White, about thirty-seven years of age, neither of whom is married.

They also alleged in their petition that there exists between the plaintiffs and defendants a controversy, in good faith, in that the plaintiffs contend and insist that they have a perfect fee-simple title to the land under said chain of title and that their tendered deed conveys such title to the defendants. On the other hand, defendants contend that plaintiffs do not have a good fee-simple title to that half of said land conveyed them by Cora White, solely because of the terms of the deed referred to by which P. W. Bottom and wife conveyed it jointly to Dr. John Patterson and "Cora White and her bodily heirs."

The petition concludes with the prayer that the court determine and declare the rights, powers and duties of the plaintiffs and defendants and adjudge that plaintiffs have a perfect fee-simple title to said real estate through the deeds referred to and have the power to vest a fee-simple title in the defendants; and that the latter be adjudged to accept the title tendered by their deed to said property and perform the contract.

Defendants filed a general demurrer to the petition and, without waiving same, filed answer and counterclaim, to which plaintiffs also filed demurrer.

Defendants by their answer and counterclaim admit that they purchased from plaintiffs the land described in the petition and that plaintiffs tendered them a deed purporting to convey them the land in fee-simple title. They further assert that they desire to purchase said land but that they refused to accept the deed and the title tendered thereby because it does not convey them a perfect and fee-simple title to said real estate; further, that by the deed of P. W. Bottom and wife, referred to and filed with the petition, one-half interest in said land was conveyed to Cora White, a granddaughter of the grantors, and her children, so that the title vested in Cora White was only a life estate with remainder to any child or children now born to her or that may yet be born to her; that because of such provisions of the deed, plaintiffs can not and by the deed tendered them did not convey to them a fee-simple title in the land. Wherefore, they joined in the prayer of the petition for a binding declaration of the rights and duties of the parties, including a construction of the deed, and that the court hold tha tsaid deed does not vest them with a fee-simple title to the land and that the contract between them be cancelled and that they be adjudged not required to comply with same.

The cause being submitted to the court for judgment upon the pleadings and exhibits, the court overruled the demurrer of defendants to the petition and sustained the demurrer of the plaintiffs to the answer and counterclaim. Further it adjudged that the deed, dated January 26, 1909, from P. W. Bottom and Catherine Bottom, his wife, to Dr. John Patterson and "Cora White and her bodily heirs" conveyed and passed the fee-simple title to the tract of land described in the petition to Dr. John Patterson and Cora White and further adjudged that the

plaintiffs (here appellees), Onis J. Hood and Osie Lee Hood, and wife, are now the owners of the land in fee simple, and that the deed tendered by plaintiffs to the defendants conveys and vests in the defendants the fee-simple title to said real estate and ordered that they accept said deed and title and perform and carry out said contract of sale and adjudged the rights and obligations of the plaintiffs and defendants accordingly.

To all of which ruling the defendants objected and excepted and prayed an appeal, which was granted and is now before us.

It is obvious from our recitation, given supra, of the pleadings and chancellor's rulings thereon that the one question here presented is as to the propriety of the chancellor's construction of the deed from P. W. Bottom and wife to Dr. John Patterson and "Cora White and her bodily heirs." If, as admitted in brief of counsel for appellants, the deed from P. W. Bottom and wife vested Cora White with a fee-simple title, as adjudged by the chancellor, it then results that appellants will receive a fee-simple title to the land in question and appellees be enabled to specifically carry out their contract. If it did not, the contract should be cancelled and the appellants released therefrom.

Appellants, while conceding that generally the words "and her bodily heirs" are construed to create an estate tail, which is converted by Section 2343, Kentucky Statutes, into a fee, argue that it is apparent from the language of the deed itself that what P. W. Bottom meant when he reserved "the privilege of selling said land at his option and reinvesting the proceeds in other land for the said Cora White and her bodily heirs but not for the said Dr. John Patterson" was to convey to Cora White only a life estate with remainder in fee to her issue. Further, they argue that these words clearly indicate it was the intention of grantor that Cora White's children, rather than Cora White herself, should take the fee-simple title and that the express exception made in the deed in favor of Dr. Patterson conclusively shows that Cora White was not given the fee, but that her grantor, P. W. Bottom, thereby manifested no purpose other than to limit the estate given Cora White to a life estate and provide for her children, and that the words "bodily heirs," as employed by him, could not possibly mean anything except the children born to Cora White; and

that these words as employed in the deed itself furnished the basis for a reasonable inference that they were used in the sense of the word "children," a term of "purchase" so as to bring this case within the long line of cases dating backward from Ely v. United States Coal & Coke Co., 243 Ky. 725, 49 S. W. (2d) 1021, 1022, supporting the appellants' contention.

However, our reference to the cited Ely case shows no rule therein declared at variance or in conflict with the rule followed and applied by the chancellor in the instant case. There the court, in construing the language of the deed, providing that it was "made and entered into * * * by and between J. H. Coldiron and Nancy, his wife, parties of the first part and Mary Day, wife of J. E. Day, and the heirs of her body begotten, parties of the second part.

"Witnesseth: That for and on consideration of the love and affection which the first parties have for their daughter the said Mary Day and for the heirs of her daughter begotten, their grandchildren * * * said first parties have this day bargained and sold and by these presents do hereby convey unto the said second parties," etc.

said:

"A correct determination of the question presented here is made to depend upon a proper interpretation or construction of the words 'the heirs of her body begotten' as used in the deed under consideration; that is, whether they are words of limitation used in the technical sense of lineal descendants or heirs to the remotest degree, or whether they are words of purchase and used in the more restricted sense indicating a definite individual or class, as the children of the first grantee and grandchildren of grantors.

"The words 'heirs of the body,' 'bodily heirs,' and equivalent or similar expressions are appropriate words to create an estate tail, and are generally so construed unless a different purpose appears by other express words or by necessary and reasonable inference. On the other hand, the word 'children' or other words equivalent thereto or used in the same sense are inappropriate to create such an estate. Brann v. Elzey, 83 Ky. 440.

"If these words were used in the technical sense as indicative of lineal descendants, posterity, or heirs, then the deed invested Mary Day with a fee-simple estate in the land conveyed. Kentucky Statutes, Section 2343; True v. Nichols, 2 Duv. 547 [63 Ky. 547]; Johnson v. Johnson, 2 Metc., 331 [59 Ky. 331] * * * Williams v. Ohio Valley Banking & Trust Co., 205 Ky. 807, 266 S. W. 670; Lilly v. Cox, 225 Ky. 355, 9 S. W. (2d) 49. Or if the meaning of the words was doubtful and obscure and it could not clearly be determined what estate the grantor intended to convey, then it would be the duty of the court to adopt that construction favoring a fee. Kentucky Statutes., Section 2342; Edwards v. Cave, 150 Ky. 272, 150 S. W. 369. Dotson v. Kentland Coal & Coke Co., 150 Ky. 60, 150 S. W. 6; Denney v. Crabtree, 194 Ky. 185, 238 S. W. 398; Fairchild v. Fairchild, 237 Ky. 700, 36 S. W. (2d) 337. If, however, upon an examination of the entire instrument it clearly appears that grantor by these words meant to designate the children of his daughter, then the construction contended for by appellants must be adopted. Righter v. Forrester, 64 Ky. 278, 1 Bush 278; * * * McFarland v. Hatchett, 118 Ky. 423, 80 S. W. 1185, 26 Ky. Law Rep. 276; Sower v. Lillard, 207 Ky. 283, 269 S. W. 330; Hatcher v. Pruitt, 231 Ky. 731, 22 S. W. (2d) 133.

"A doubtful or strained construction is not necessary to determine the class into which this case falls. Where the 'heirs of her body begotten' are referred to as the grandchildren of the grantors, no room is left for doubt or cavil. But in further confirmation of the intent and purpose of the grantors, the deed in caption, granting, and habendum clauses refers to grantees as 'parties of the second part' or 'said second parties.' The grandchildren of grantors begotten of the body of Mary Day could mean none other than her children. There is no escape from the conclusion that this deed conveyed to Mary Day an estate for life with remainder in fee to her children."

The instant case, however, is clearly distinguishable in its facts from the Ely case and which, in our opinion, are such as bring it within the rationale of the decision of

the like question presented in the somewhat similar case of Simons et al. v. Bowers et al., 258 Ky. 755, 81 S. W. (2d) 604.

In the Simons case Henry Price owned a farm containing about 200 acres situated near Louisville, Ky., and his will disposed of it in aliquot parts. To his two daughters, Ada Gray, nee Price, and Rebecca Lee, nee Price, he devised 20 acres each, and to his daughter, Lidy Simons, nee Price, he devised 30 acres "to them and their bodily heirs." Only the portion devised to Mrs. Simons was involved in this case.

The appellants (plaintiffs below), Samuel E. Simons and Joe Walter Simons, were the only descendants of Lidy Simons (then deceased), the one being her son and the other her only grandchild, whose parents had died. The two filed an action in the Jefferson circuit court against appellees (defendants below and the then owners) seeking to recover the land from them upon the ground that the will of Henry Price limited the estate of his daughter Lidy to her life and then to her children and which theory was there, as here, bottomed upon the contention that the words of the testator, "her bodily heirs," following her name as a devisee in his will, were used by him in the sense of or to designate the first taker's children and were intended, where so used, to be construed as words of purchase rather than of limitation.

There the court sustained a demurrer to the petition and to the will filed by defendants.

However, the language of the deed in the instant case, like that in the Simons case, but unlike that in the Ely case, supra, does not itself indicate that the words conveying the land to "Cora White and her bodily heirs" were used in the sense of designating her children, as was found in the Ely case, but such expression is employed three times in the body of the deed without the use of any qualifying words, such as "children" or "grandchildren" and thus the instrument itself does not tend to support the inference that the words "bodily heirs" were used in the sense of "children" or "grandchildren."

Such being the question presented in the Simons case, supra, the court ruled upon this question in a well-considered opinion, citing numerous cases in support of the conclusion reached, that a conveyance to one and his

or her "bodily heirs" or "heirs of his or her body" created under the statute supra a fee in the first taker and not a life estate with remainder to his or her children. Further it was held that in such case, where a deed or devise failed to show by other qualifying or designating language that the words "bodily heirs" were used in the sense of the words "children" or "grandchildren," they would not be construed as being used in that sense or as words of purchase, but rather as words of limitation only, where a different intention on the part of the grantor or devisor was not disclosed by some such words in the instrument itself. Further we therein held that parol testimony in such case was not admissible for changing the legal significance of the words and phrases employed in the will, on the face of which no ambiguity or doubt appeared as to sense in which the words were employed; that is, that parol evidence could not be used to show the intention of the grantor to use such expressions, "bodily heirs" or "heirs of his or her body," as designating children or grandchildren, where the language of the deed itself did not raise a doubt or ambiguity as to the sense in which they were used.

The learned chancellor therefore, we conclude, properly held such contention to be without merit and adjudged that the deed conveying the land to "Cora White and her bodily heirs" vested in her a fee simple title and that the deed executed by her and Dr. Patterson to the plaintiffs conveyed them a fee simple title, which they in turn passed to appellants by the deed tendered them. Accordingly, the learned chancellor rightly adjudged that appellants should accept the deed tendered and carry out their contract had with appellees.

Judgment affirmed.